## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 23-11620-TBM |
| | ) | |
| ERIC RALLS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

### PLANTSNAP INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

PlantSnap Inc. ("**PlantSnap**"), by and through undersigned counsel, move (the "**Motion**") for relief from the automatic stay under section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") to proceed with pending litigation in state court to liquidate a disputed and unliquidated claim against Eric Ralls ("**Ralls**" or the "**Debtor**"), and states as follows:

### INTRODUCTION

1.      PlantSnap, Ralls, and Earth.com, Inc.[1] ("**Earth**") have been embroiled in contested litigation for more than two years. Just forty-seven days prior to the June 5, 2023 trial date, and just one day after the State Court (as defined below) partially granted a summary judgment motion in favor of DEJ Partners, LLC ("**DEJP**") against Ralls, resulting in a $978,043.23 judgment and a judicial finding that Ralls no longer owns his shares in PlantSnap, both Ralls and Earth sought refuge in this Court.

2.      As a result of the bankruptcy case, the State Court stayed the State Court Action (as defined below) with respect to all claims involving Ralls, Earth, and other non-debtors. PlantSnap seeks relief from stay to prosecute the State Court Action, which will liquidate its disputed and unliquidated claim against Ralls, and allow PlantSnap to obtain declaratory relief that it properly removed Ralls as an officer and director of PlantSnap two years ago. Such a finding has no impact

---

[1] Earth filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 19, 2023. *See In re Earth.com, Inc.*, No. 23-11621-TBM (Bankr. D. Colo. Apr. 19, 2023), ECF No. 1.

on the Debtor's estate because the State Court—just one day prior to the petition date—determined that DEJP properly foreclosed on Ralls' shares in PlantSnap and registered the shares in its name. The declaratory relief is, therefore, nothing more than an extension of the State Court's recent holding: that DEJP, as the majority shareholder in PlantSnap, properly removed Ralls as an officer and director of PlantSnap. Accordingly, the Court should grant the Motion because cause exists.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

5. The statutory and legal predicates for relief requested herein are sections 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and L.B.R. 4001-1.

## SERVICEMEMBERS CIVIL RELIEF ACT

6. Pursuant to L.B.R. 4001-1(a)(4) and 4002-3(c), Ralls is not in the military service. A copy of the Servicemembers Civil Relief Act Affidavit is attached at Exhibit 1.

## BACKGROUND

**I.    PlantSnap's Formation and Agreements.**

7. Ralls founded PlantSnap in 2016, and served as its majority shareholder, director, and CEO from its formation until March 9, 2021.

8. PlantSnap is a mobile application that allows users to identify plant genus and species through their cell phone cameras.

9.     DEJP became PlantSnap's first major seed investor in February of 2017. Over the course of the next two years, PlantSnap, Ralls, and DEJP executed numerous agreements in which DEJP loaned money or extended credit to PlantSnap, two of which are relevant to this matter.

**A.     Consolidated Note.**

10.     On September 30, 2019, PlantSnap and DEJP executed that certain Consolidated Note in the principal amount of $9,103,301.44 (the "**Consolidated Note**"). A copy of the Consolidated Note is attached at Exhibit 2.

11.     The Consolidated Note consolidated, in part, obligations under various agreements, including the following: (i) that certain Accounts Receivable Loan Pledge Agreement dated July 12, 2017 between DEJP, PlantSnap, and Ralls, as amended by that certain Amended and Restated Accounts Receivable Loan and Pledge Agreement dated August 9, 2017 (the "**A&R Agreement**"); (ii) that certain Royalty Agreement dated July 26, 2017 between DEJP, PlantSnap, and Ralls, as amended by that certain Amended and Restated Royalty Agreement dated May 24, 2018 (the "**Royalty Agreement**"), a copy of which is attached at Exhibit 3; and (iii) that certain Royalty Agreement dated September 30, 2018 between DEJP, PlantSnap, and Ralls (the "**Consolidated Royalty Agreement**"). Ex. 2 at 11.

12.     Under the Consolidated Note, an Event of Default occurs when PlantSnap failed to timely pay the amounts due under the Consolidated Note. *Id.* § 6(a)(i).

13.     As security for PlantSnap performing its obligations under the Consolidated Note, as well as the A&R Agreement, Royalty Agreement, and Consolidated Royalty Agreement, Ralls agreed to pledge 750,000 shares of common stock in PlantSnap (the "**Pledged Shares**"). *Id.* § 4(a)–(b); Ex. 3 § 5(a).

14.     Under the Consolidated Note, "[a]ll instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer [DEJP] pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers." Ex. 2 § 4(d).

15.     The Consolidated Note further stated,

> Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral.

*Id.* § 4(g)(i).

16.     In connection with the Royalty Agreement, Ralls previously executed the Assignment Separate from Certificate (the "**Stock Power**"). Ex. 3 at PS_0000058.

**B.     Amex Agreement.**

17.     On August 15, 2017, DEJP, PlantSnap, and Ralls executed that certain Credit and Reimbursement Agreement (the "**Amex Agreement**," and with the Consolidated Note, the "**Obligations**"). A copy of the Amex Agreement is attached at Exhibit 4.

18.     Pursuant to the Amex Agreement, DEJP authorized PlantSnap to use its American Express credit card for PlantSnap's business in exchange for the repayment of card charges plus interest. Ex. 4 § 1. The charged amounts and interest on those amounts became due and payable within five days of receipt of the card statement. *Id.* § 2.

19.     An Event of Default occurs when PlantSnap failed to pay the amounts due under the Amex Agreement when due and failed to cure such default within five business days of written notice of the default. *Id.* § 7(a)(i).

20.     As security for PlantSnap performing its obligations under the Amex Agreement, Ralls, again, agreed to pledge the Pledged Shares. *Id.* § 5(a), (b).

21.     The total number of the Pledged Shares pledged under the Amex Agreement was commensurate with the total amount owed under the Amex Agreement at the time of the Event of Default. *Id.* § 5(g)(i). For example, if the total amount owed under the Amex Agreement at the time of the Event of Default was $3,000, then the total number of Pledged Shares pledged under the Amex Agreement was 3,000. *See id.*

22.     The Amex Agreement stated that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]." *Id.* § 5(b).

23.     The Amex Agreement further stated, "[a]ll instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in lank, including duly executed blank stock powers." *Id.* § 5(d).

24.     Moreover, "[u]pon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral." *Id.* § 5(g)(i).

**II.     PlantSnap Defaults on the Obligations.**

25.     As of February 24, 2021, PlantSnap failed to repay $11,398,304.11 in outstanding principal and interest when due under the Consolidated Note, and $978,043.23 in outstanding principal and interest when due under the Amex Agreement.

26.     That same day, DEJP sent to PlantSnap the Notice of Default and Demand for Repayment (the "**Default Notice**"). A copy of the Default Notice is attached at <u>Exhibit 5</u>.

27.     In the Default Notice, DEJP demanded the immediate repayment of all obligations. PlantSnap, under Ralls control and direction, failed to cure the defaults under the Obligations

within five business day of the Notice of Default. Thus, Events of Default occurred under the Obligations.

### III.    Ralls Is Removed as a Shareholder, Director, and Officer of PlantSnap.

28.    On March 6, 2021, DEJP sent a letter to Ralls, notifying him that DEJP intended to exercise its right to foreclose on the Pledged Shares (the "**Invocation Notice**"), which included the right to remove Ralls from management, and which Ralls received on March 8, 2021.

29.    On March 8, 2019, following receipt of the completed Stock Power and confirmation that Ralls received the Invocation Notice, PlantSnap, as required under the Obligations, transferred the Pledged Shares from Ralls to DEJP on PlantSnap's stock ledger. As a result of the transfer, DEJP became PlantSnap's majority shareholder.

30.    On March 9, 2021, DEJP provided PlantSnap a signed written consent that removed Ralls as a director on PlantSnap's Board of Directors (the "**Board**"). DEJP appointed Mr. Dan Johnson as the sole member of the Board.

31.    On March 9, 2021, the Board issued a Written Consent of the Board of Directors of PlantSnap Inc. (the "**Resolutions**"). A copy of the Resolutions is attached at Exhibit 6. The Resolutions provided, in relevant part, that Ralls was removed from any and all officer or director positions with PlantSnap and that Matt Giblin ("**Giblin**") was appointed as the chief executive officer, treasurer, and secretary.

### IV.    Ralls' Fraudulent Activities Prior to Being Removed from PlantSnap.

#### A.    Ralls used Earth as a vehicle to commit fraud.

32.    Ralls is the sole officer and director of Earth.

33.    Earth provides news and information concerning nature, science, and the environment through the website, http://www.earth.com/ (the "**Earth Domain**").

34.     Earth has no ownership interest in the Earth Domain. Earth previously rented the Earth Domain pursuant to that certain Rent to Own—Domain Name Sale Agreement dated June 27, 2016 between Ralls Enterprises, LLC and Innovation HQ, Inc. ("**Innovation**") (the "**Rent-to-Own Agreement**").[2]

35.     However, Earth defaulted on the Rent-to-Own Agreement within months of executing the agreement, and according to Earth's *Official Form 204, Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders*, Innovation has an unliquidated claim for $5 million [Case No. 23-11621-TBM, Docket No. 3].

36.     On April 25, 2022, Innovation sent a letter to Ralls, declaring a default under the Rent-to-Own Agreement and notifying Ralls of Innovation's intention to repossess the Earth Domain.[3]

37.     Neither Ralls nor Earth (nor any affiliate) cured the default, and Innovation repossessed the Earth Domain. *See* Earth Dep. Tr. 85:24–86:2, Mar. 27, 2022 ("Q: So [Innovation] made good on the default notice Exhibit 45? A: Indeed."); *id.* at 161:11–19 ("Q: You said the rent-to-own agreement had been voided. A: Yes. Q: And that Innovation is taking their dot-com domain back? A: They have done so. Q: Okay. Does Earth.com, Inc. have any rights or claim or interest to that domain? A. No."). Excerpts of the Earth Deposition (Ralls) Transcript are attached at Exhibit 7.

---

[2] At some point in time, Ralls Enterprises, LLC's interest in the Rent-to-Own Agreement was transferred to Earth.

[3] The parties to the State Court Action received the default notice from a third party, which marked the document as "CONFIDENTIAL." Pursuant to paragraph 3 of the Stipulated Protective Order entered by the State Court, PlantSnap cannot disclose this document absent consent of the disclosing party.

38.      Additionally, Earth is not profitable. Although Earth depicts in its most recent financials net income as \$115,895.15, it actually had a net loss of -\$559,104.85 after removing loan proceeds from income.[4] *See* Earth Profit and Loss Statement at 1, 5, attached at Exhibit 8.

39.      PlantSnap ran three crowdfunding campaigns while Ralls was CEO. During the third campaign in October of 2019, Giblin discovered, for the first time, that Ralls had been paying Earth hundreds of thousands of dollars under the category, "Advertising," pursuant to a certain Sponsorship Agreement dated January 1, 2017 between PlantSnap and Earth (the "**Sponsorship Agreement**"). A copy of the purported Sponsorship Agreement is attached at Exhibit 9. PlantSnap maintains the Sponsorship Agreement provided no discernable value to PlantSnap, as no record of services provided by Earth exist, and that Ralls and Earth executed the agreement solely to perpetuate a fraud on PlantSnap. Tellingly, Earth has never sought to recover or setoff amount allegedly owed by PlantSnap in the State Court Action.

40.      Additionally, Ralls used PlantSnap's vendors, contractors, and intellectual property to further Earth's operations without compensating PlantSnap.

41.      Based on Ralls' own testimony, the implied value of PlantSnap's stolen intellectual property is \$10 million. Ralls testified that he sold a 12% interest in Digital Earth Media, Inc. ("**DEM**") for \$1.2 million. *See* Ex. 7 at 121:2–20. Ralls also testified that DEM is a holding

---

[4] Earth shows \$47,000 in total income and \$290,310.37 in cost of goods sold, for a gross profit of -\$243,310.37. *See* Ex. 8 at 1, 5. Earth also shows numerous expenses, which can be categorized as non-suspense and suspense expenses. *See id.* at 5–23. The non-suspense expenses total \$288,787.84, whereas the suspense expenses are -\$647,993.36. *Id.* Adding these two expenses together, Earth claims -\$359,205.52 in expenses, which results in a net profit of \$115,895.15. However, the non-suspense expenses includes significant amounts received from investors, which total, just by looking at four investors (VHD II Holdings, GGF II Holdings, LLC, Karen O'Neal, and HI Investments LLC), \$675,000. *Id.* at 18–19. Removing these investor amounts from the stated -\$359,205.52 shows that expenses were actually \$315,794.48. *Id.* at 18–19. In other words, Earth's actual income was roughly -\$559,104.85.

company for several affiliated companies, and refused to testify without incriminating himself that they stole and used PlantSnap's intellectual property. *See* Ralls Dep. Tr. 290:5–18, Mar. 26, 2022 ("Q: Is the plant database, of now over 600,000 plants, currently used on any of your businesses . . . ? A: On the advice of counsel I plead the Fifth. Q: Is any of PlantSnap's intellectual property or trade secrets being used by Earth, DEM, [or other affiliated entities]? . . . A: On the advice of counsel I plead the Fifth."). Excerpts of the Ralls Deposition Transcript are attached at <u>Exhibit 10</u>.

> **2.    Ralls engaged in a years-long practice of spending PlantSnap's funds for his own personal benefit.**

42.    During the State Court Action, Mr. Josh Harrison, PlantSnap and DEJP's expert witness, discovered an "extensive" amount of "commingling" between PlantSnap, Ralls, and Earth, discovering at least $2,620,731 in the following damages:

> a.    $1,741,316 in transfers from PlantSnap's bank accounts to other bank accounts under Ralls' control;
>
> b.    $366,048 from Ralls' use of business credit cards for personal spending;
>
> c.    $292,259 in payments made by PlantSnap to the personal credit cards of Ralls and his mother, Karen Barett;
>
> d.    $104,000 in rent paid for Ralls' house in Telluride, Colorado that was reported as a business expense;
>
> e.    $65,007.28 paid towards a prior litigation settlement related to GreenAtom, Inc., another affiliated entity of Ralls, for which PlantSnap has no involvement;
>
> f.    $32,000 paid directly to Ralls' mother; and
>
> g.    $25,107 in ATM withdrawals and other cash withdrawals from PlantSnap's checking accounts.

*See* Harrison Expert Report, June 13, 2022, attached at <u>Exhibit 11</u>.

> **3.    The 705 Investors.**

43.    A portion of the $1,741,316 is particularly egregious. In late-2020 and early-2021, Ralls solicited six investors (the "**705 Investors**") to invest in PlantSnap. Between February 22

and March 8, 2021, and despite knowing the company had defaulted on its obligation to DEJP, Ralls entered into six convertible notes on behalf of PlantSnap with the 705 Investors. By way of reference, the last three promissory notes executed by Ralls on behalf of PlantSnap on March 8, 2021 occurred just two days ***after*** DEJP informed Ralls that it was taking ownership of the Pledged Shares, and just one day ***before*** Ralls was removed as a director and officer.[5]

44.    Of these six investors, one "Accredited Investor," who could "only scrape together about $500," eventually agreed to invest $5,000, an amount she clearly could not afford, after Ralls reduced the "minimum" investment amount from $125,000 to $20,000 to $5,000. *See* <u>Exhibit 12</u> at 1, Emails between Ralls and Sweet; *see generally id.*

45.    On account of DEJP foreclosing on Ralls' shares in PlantSnap, and the Board removing Ralls as an officer and director of PlantSnap, Ralls recognized that he would no longer be entitled to such proceeds, and directed the 705 Investors to wire the funds directly to Earth's bank account. Ralls and Earth took $705,000 from PlantSnap during this time, $630,000 of which occurred on or after the date on which Ralls was removed as an officer, director, and shareholder of PlantSnap.

46.    Moreover, when one investor asked why the money was being transferred to Earth, and not PlantSnap, Ralls stated on March 11, 2021, "I'm working to integrate earth.com and PlantSnap under one umbrella, and that umbrella is what you are buying stock in." This false statement was made two days after Ralls was removed as an officer, director, and shareholder of PlantSnap. *See* <u>Exhibit 13</u> at 12, Emails between Ralls and Brownlie.

---

[5] During his communications with the 705 Investors, Ralls did not inform them of DEJP foreclosing on his shares in PlantSnap or the Board removing him as an officer and director of PlantSnap. *See* Exs. 12, 13.

**4.      Ralls Failed to Pay PlantSnap's Creditors as CEO.**

47.      While duping the 705 Investors and siphoning off PlantSnap's funds for his own benefit, Ralls failed to pay PlantSnap's creditors.

48.      Since Ralls was removed as an officer and director of PlantSnap, PlantSnap has spent considerable resources working to resolve past-due payments with PlantSnap's creditors, and has even had to litigate—and continues to litigate—with several of PlantSnap's and/or Earth's creditors. *See, e.g.*, *SocialCode, LLC v. PlantSnap Inc.*, No. 2023CV30002 (Colo. Dist. Ct. San Miguel Cty. Jan. 31, 2023); *Entravision v. PlantSnap Inc.*, No. 2022CV30007 (Colo. Dist. Ct. San Miguel Cty. Mar. 3, 2022).

**V.      The State Court Action to Be Lifted.**

**1.      Claims and Preliminary Injunction.**

49.      On March 17, 2021, PlantSnap initiated an action against Ralls and Earth before the San Miguel County, Colorado District Court (the "**State Court**") in the case styled, *PlantSnap Inc. v. Ralls*, No. 2021CV30005 (Colo. Dist. Ct. San Miguel Cty. Mar. 17, 2021) (the "**State Court Action**").

50.      In the State Court Action, PlantSnap seeks a declaration that Ralls was properly removed from PlantSnap, and damages on account of Ralls and Earth's widespread fraud and civil theft, among other claims.[6]

51.      On April 23, 2021, the State Court heard PlantSnap and Ralls' cross-motions for preliminary injunction,[7] and on April 27, 2021, entered the *Combined Order Re: Plaintiff's and*

---

[6] Such claims form the basis of a nondischargeability action under section 523 of the Bankruptcy Code.

[7] In his preliminary injunction motion, Ralls maintained the DEJP's foreclosure of his shares was improper and that the status quo was having Ralls continue to act as PlantSnap's management.

*Defendant's Motions for Preliminary Injunction* (the "**Combined Order**"), a copy of which is attached at Exhibit 14.

52.     In the Combined Order, the State Court resoundingly rejected Ralls' "incredible" testimony and arguments as to why he was entitled to the Pledged Shares, and found that "Ralls was properly removed from the PlantSnap Board once [DEJP] proceeded pursuant to the Consolidated Note[ and] Amex Agreement." Ex. 14 at 6, 9. As a result, the State Court (i) "immediately enjoined [Ralls] from acting on behalf of PlantSnap and representing to any third parties that he is currently affiliated with PlantSnap," and (ii) ordered that Ralls "shall immediately turn over complete access to all of PlantSnap's Account," including PlantSnap's Google Workspace Suite, or "G-Suite." *Id.* at 15–16.

**2.     Contempt Proceedings.**

53.     Less than one hour after the Court entered the Combined Order, Ralls began destroying evidence and permanently deleting accounts that the State Court ordered him to turn over to PlantSnap. The destroyed evidence included, among other things, documents related to the $705,000 that he solicited from the 705 Investors.

54.     Ralls refused to turn over access to PlantSnap's G-Suite until shortly after the accounts were ***permanently*** deleted.

55.     Additionally, Ralls continued to operate a bank account in the name of PlantSnap well after the State Court entered the Combined Order and in violation thereof.

56.     Furthermore, Ralls attempted to solicit a $750,000 investment through his Earth contacts in May of 2021, pledging the shares on which the State Court already found DEJP properly foreclosed.[8]

57.     As a result of these actions, PlantSnap moved for contempt sanctions. The State Court awarded both remedial and punitive sanctions, including an award of PlantSnap's attorneys' fees and costs in the amount of $84,938.76 and sentencing Ralls to **_forty-eight hours in county jail_**. The State Court, again, noted that Ralls was not a credible witness. Copies of the Court's contempt orders are attached at <u>Exhibit 15</u>.

     **3.**     **Revelations During the Discovery Process.**

58.     Undeterred by the fact that his fraud was being systematically uncovered in the State Court Action, Ralls continued to perpetuate his fraud through three new entities he created in May of 2021: EarthSnap, Inc. ("**EarthSnap**"), DEM, and Metaversal Knowledge, Inc. ("**Metaversal**," and collectively, the "**New Ralls Entities**").[9]

59.     EarthSnap makes no secret that it stole PlantSnap's intellectual property, as demonstrated on an advertisement found on the Earth Domain:

---

[8] This document is similarly marked "CONFIDENTIAL" by the producing third party. *See supra* n.3.

[9] Of these three entities, only EarthSnap filed for bankruptcy. *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, *In re EarthSnap, Inc.*, No. 23-11622-TBM (Bankr. D. Colo. Apr. 19, 2023).



60.     During the depositions of Ralls and Earth, at which Ralls pleaded the Fifth Amendment **two-hundred and seventy-nine times**, Ralls admitted that he transferred all his interests in Earth to DEM for no value. *See* Ex. 7 at 150:9–15.[11]

61.     Through the New Ralls Entities, Ralls was able to secure an additional $1.3 million from unwitting investors. Unsurprisingly, Ralls blew through the $1.3 million by February of 2022, leaving just $4,464 between the three bank accounts controlled by Ralls.

**4.      Summary Judgment and Trial (Procedural Posture/Trial Readiness).**

62.     At the time Ralls and Earth filed for bankruptcy, the June 5, 2023 trial date was just forty-seven days away. At that time, PlantSnap, Ralls, and Earth had completed fact and expert

---

[10] EarthSnap, https://www.earth.com/earthsnap/ (last visited Apr. 26, 2023).
[11] In November of 2022, the attorney that represented Ralls and Earth in the State Court Action informed counsel that he could no longer represent both Ralls and Earth, forcing Earth to retain separate counsel.

discovery, filed dispositive and evidentiary motions, and were preparing to exchange witness and exhibit lists.

63.    On February 28, 2023, PlantSnap filed a partial motion for summary judgment against Ralls and Earth, seeking summary judgment on its declaratory judgment and civil theft claims, damages in the amount of $2.6 million on account of the $705,000 that Ralls and Earth stole from PlantSnap, and a declaration that PlantSnap properly removed Ralls as an officer and director of PlantSnap on March 9, 2021.

64.    That same day, DEJP filed a partial motion for summary judgment against Ralls, seeking summary judgment on its breach of contract and specific performance claims, damages in the amount of $978,043.23, and a declaration that DEJP is the owner of the Pledged Shares.

65.    On April 18, 2023—just one day before Ralls and Earth filed for bankruptcy—the State Court entered an order on DEJP's partial summary judgment motion. *See* Order Re: DEJ Partners, LLC's Motion for Partial Summary Judgment Against Eric Ralls, attached at Exhibit 16. There, the State Court held that "[t]here is no dispute that Ralls is in default under the Amex Agreement, and the Court has already found that DEJP 'was entitled to foreclose upon all 750,000 shares under the Amex Agreement.'" *Id.* at 2 (citing Combine Order 12). Although the State Court held that DEJP properly took possession of the shares and registered the shares in its name, the State Court could not determine whether DEJP was entitled to ownership (as a form of disposition) of the shares, because DEJP did not present evidence demonstrating compliance with Article 9 of the Uniform Commercial Code. *Id.* at 2, 5–6.

66.    The State Court did not rule on PlantSnap's partial summary judgment motion, which is fully-briefed and pending before the State Court, as of the petition date.

VI.     **The Chapter 11 Case.**

67.     On April 19, 2023 (the "**Petition Date**"), Ralls filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code [Docket No. 1].

68.     The Debtor's subchapter V plan of reorganization is due on July 18, 2023 [*see* Docket].

69.     Ralls did not file schedules and statements, but identified PlantSnap as holding two claims:

>       a.     A contingent, unliquidated, and disputed claim in the amount of $84,338.76 on account of an attorneys' fee award[12]; and
>
>       b.     A contingent, unliquidated, and disputed claim in the amount of $0.00 on account of the claims asserted in the State Court Action

[*See* Docket; Docket No. 3 at 2, 6].

70.     On April 25, 2023, the Court set the claims bar date for June 28, 2023 [Docket No. 17]. PlantSnap has not yet filed proofs of claim for all of its damages, including those in the amount of $84,338.76 and $12,620,731 (corresponding to the above claims).

71.     PlantSnap anticipates filing an adversary proceeding, in which PlantSnap will assert claims under section 523 of the Bankruptcy Code against Ralls (the "**Nondischargeability Action**").

72.     PlantSnap seeks relief from stay to prosecute the State Court Action, which will allow PlantSnap to liquidate the disputed and unliquidated claim against Ralls and to obtain a declaratory judgment that Ralls was properly removed as an officer and director of PlantSnap.

---

[12] It is unclear how this claim is contingent, unliquidated, or disputed, as the State Court entered, what is now, a final, non-appealable judgment for this amount on February 15, 2023.

**BASIS FOR RELIEF**

73.     Upon the filing of a voluntary petition, the Bankruptcy Code imposes an automatic stay against "the commencement . . . of a judicial, administrative, or other action or proceeding against the debtor" and "the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case." 11 U.S.C. § 362(a)(1), (2). "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." *Id.* § 362(d)(1).

74.     What constitutes "cause" for relief from the automatic stay is determined by the bankruptcy court on a case-by-case basis. *See Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987). "Whenever a party seeks relief from the automatic stay 'for cause,' under 11 U.S.C. § 362(d)(1), in order to continue proceedings in another court, it is appropriate to follow the *Curtis* factors . . . to guide the Court's analysis," which are set forth below:

1. Whether the relief will result in a partial or complete resolution of the issues.

2. The lack of any connection with or interference with the bankruptcy case.

3. Whether the foreign proceeding involves the debtor as a fiduciary.

4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

10. The interest of judicial economy and the expeditious and economic determination of litigation for the parties.

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

12. The impact of the stay on the parties and the "balance of hurt."

*Baack v. Horizon Womens Care Prof'l LLC (In re Horizon Womens Care Prof'l LLC)*, 506 B.R. 553, 557–58 (Bankr. D. Colo. 2014) (quoting *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)).

75.     In any hearing on this Motion, the Debtor has the burden of proof on all issues. *See* 11 U.S.C. § 362(f). Here, the *Curtis* factors weigh heavily in favor of granting the Motion.

76.     <u>Resolution of the Issues</u>. Granting relief from stay will liquidate the entirety of PlantSnap's disputed and unliquidated claim against Ralls, and will result in a complete resolution of the State Court Action. The parties are miles apart on the amount of the claims and PlantSnap's claims must be liquidated.

77.     Additionally, PlantSnap intends on filing the Nondischargeability Action against Ralls. Although the State Court cannot rule on whether Ralls' debts are nondischargeable, stay relief is appropriate where "the findings of fact from the [State Court Action] would form the basis for issue preclusions in the Nondischargeability action." *See In re Torres-Montoya*, No. 17-11823 ta7, 2017 Bankr. LEXIS 4011, at *8 (Bankr. D.N.M. Nov. 21, 2017) (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1991)); *see also Farrell v. Hopkins (In re Hopkins)*, 2012 Bankr. LEXIS 749 (Bankr. D. Wyo. Feb. 28, 2012) (granting summary judgment on nondischargeability claim because elements creditor had to prove to establish that damages he was awarded for civil theft created debts that were nondischargeable under section 523(a)(2) of the

Bankruptcy Code were identical to elements he had to prove to show that the debtor committed civil theft under Colorado law). The State Court Action will, therefore, have the added benefit of allowing the parties to resolve many of the factual issues underlying the Nondischargeability Action while simultaneously resolving the Debtor's liability (or not) on PlantSnap's claims. This factor weighs strongly in favor of granting the Motion.

78.     <u>Lack of Connection or Interference with the Bankruptcy Case</u>. Because Ralls is restructuring his debts, PlantSnap's disputed and unliquidated claim must be liquidated. *See, e.g.*, *In re Peak Serum, Inc.*, 623 B.R. 609, 625 (Bankr. D. Colo. 2020) (stating "final resolution of both lawsuits is required for estate administration purposes"); *In re Danzik*, 549 B.R. 804, 808 (Bankr. D. Wyo. 2016) (stating that in a reorganization case, "creditors' claims must be liquidated," and that "[e]ntry of a final judgment will assist the Court, as oppose to interfere, as it will allow the claim to be properly addressed and handled . . . through the Debtor's plan of reorganization"). Allowing the State Court, which is intimately familiar with the claims, parties, and facts of the State Court Action, to liquidate PlantSnap's disputed and unliquidated claim against Ralls will avoid "duplication, delay, and additional expense." *Danzik*, 549 B.R. at 809.

79.     Moreover, the declaratory relief sought by PlantSnap is only tangentially related, if not completely unrelated, to Ralls.[13] The State Court already held that DEJP properly foreclosed on the Pledged Shares and registered the shares in its name, and that the only remaining question is that of disposition. Ex. 16 at 2, 5–6. In other words, the State Court has already determined that Ralls is not entitled to the Pledged Shares. *See id.* Because DEJP had the authority to remove—

---

[13] PlantSnap recognizes that "the automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of shareholders' corporate governance rights." *In re Marvel Entm't Grp.*, 209 B.R. 832, 838 (D. Del. 1997). However, because this issue is pending before the State Court and is contested by Ralls, PlantSnap seeks stay relief out of an abundance of caution.

and, in fact, removed—Ralls as an officer and director of PlantSnap, this issue is all but decided. *See also* Ex. 14 at 9 ("The Court finds that Ralls was properly removed from the PlantSnap Board once [DEJP] proceeded pursuant to the Consolidated Note, Amex Agreement, and the Note."). This factor weighs strongly in favor of granting the Motion.

80.    Debtor as a Fiduciary. This factor is inapplicable.

81.    Specialized Tribunal Better Suited to Determine the Issue. The State Court Action is before a Colorado district court. "While this is not a specialized tribunal, the Judge has been handing the case from the start." *Danzik*, 549 B.R. at 809. The State Court is intimately "familiar with the causes of action alleged, the parties involved, and the facts of the State Court Action," as evidenced by the fact that the State Court Action has been pending for more than two years, that the State Court has conducted numerous hearings, including three in which Ralls testified, and that the parties were on the verge of trial. This factor weighs in favor of granting the Motion.

82.    Costs to Litigate Borne by Insurance Carrier. Because no insurance carrier is involved in the State Court Action, this factor is inapplicable.

83.    Third Party Liability and Debtor Functions as a Bailee or Conduit. Because PlantSnap seeks to liquidate its claim(s) against Ralls, this factor is inapplicable. *See In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ("Such lack of connection with the title 11 case occurs where . . . the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate.").

84.    Whether the Litigation Prejudices the Interests of Other Creditors. The Debtor must liquidate PlantSnap's disputed and unliquidated claim against the estate. *See Peak Serum*, 623 B.R. at 625. Furthermore, the declaratory relief sought by PlantSnap does not impact Ralls' creditors,

20

because the State Court has already determined that DEJP properly foreclosed on the Pledged Shares and registered the shares in its name. *See* Ex. 16 at 2, 6–7. Additionally, "[t]he fact that the lawful and appropriate resolution of a legal claim may result in reduced potential for recovery by the estate does not constitute legal prejudice to the rights of creditors." *Danzik*, 549 B.R. at 810 (citing *Horizon Womens Care Prof'l LLC*, 506 B.R. at 559).

85.     Furthermore, granting this Motion at this early juncture does not prejudice or harm the creditors of Ralls or Earth. Ralls admits that he has no assets around which to reorganize. *See* Ex. 10 at 258:9–15 ("Q: Do you have any assets? A: No. Q: So what good is a personal guarantee to anyone from Eric Ralls? . . . A: On the advice of counsel I plead the Fifth."). Earth is in a similar situation. Earth has no interest under the Rent-to-Own Agreement or the Earth Domain. Earth's only assets, to the extent Ralls has not transferred those assets, is the content on the Earth Domain and two trademarks for EarthSnap and Earthpedia. *See* Ex. 7 at 138:10–139:25. Moreover, Earth is not profitable, as demonstrated by its last profit and loss statement, which shows more than $550,000 in net losses. *See* Ex. 8. No creditor will be prejudiced by allowing PlantSnap to prosecute its claims in the State Court Action because there is nothing around which Ralls and Earth can reorganize. Because Ralls and Earth have "no cognizable assets to fund a plan of reorganization and no realistic probability of a successful organization," the Court should not allow them to use the automatic stay as "a last-minute escape chute out of pending civil litigation." *In re HBA E., Inc.*, 87 B.R. 248, 260, 262 (Bankr. E.D.N.Y. 1988) (citation omitted). This factor weighs in favor of granting the Motion.

86.     <u>Equitable Subordination</u>. This factor is inapplicable.

87.     <u>Avoidable Lien</u>. This factor is inapplicable.

88.    _Judicial Economy and Expeditious Determination of the Issues_. The State Court, which has been involved with the underlying facts for more than two years, is best able to resolve the issues pending before it, and the State Court's "steps necessary to finalize these matters are minimal when compared to the resources that this Court and parties would expend re-litigating the issues." _Danzik_, 549 B.R. at 810. Moreover, "when there are multiple parties involved in the non-bankruptcy litigation, considerations of judicial economy may support the return of the litigation to the non-bankruptcy forum." _In re Chan_, 355 B.R. 494, 501 (Bankr. E.D. Pa. 2006). _See also In re Melly_, No. 18-26036-RG, 2019 Bankr. LEXIS 1383, at *11 (Bankr. D.N.J. Apr. 29, 2019) (same); _In re Yaffe_, 58 B.R. 26, 26 (Bankr. D.D.C. 1986) (granting relief from the automatic stay to permit state court to proceed to judgment in case that involved multiple parties and claims). In addition to PlantSnap, Ralls, and Earth, the State Court Action involves numerous other parties, including DEJP, EarthSnap, DEM, and Metaversal. This factor weighs in favor of granting the Motion.

89.    _Preparation of State Court Action for Trial_. The Debtor initiated this chapter 11 case just forty-seven days before trial, and just one day after the Court entered an order on one of two summary judgment motions. The State Court is prepared to rule on the second summary judgment motion, and the State Court and all of the parties to the State Court Action were taking the final steps to prepare for trial. PlantSnap, Ralls, and Earth had already completed fact and expert discovery, exchanged expert reports, and filed summary judgment and evidentiary motions. The parties were days away from exchanging witness and exhibit lists. Aside from these lists, the only remaining items for the parties was to submit the trial management order, jury instructions, and (if applicable) trial briefs, and to attend the May 26, 2023 trial management conference. The parties were nearly trial ready. This factor weighs in favor of granting the Motion.

90.     <u>The Balance of Hurt</u>. The Court must balance the financial hardship to PlantSnap with the financial hardship to the Debtor. *See Danzik*, 549 B.R. at 810. Here, the Debtor must liquidate PlantSnap's disputed and unliquidated claim regardless of the forum. Furthermore, because PlantSnap, Ralls, and Earth completed fact and expert discovery, filed dispositive and evidentiary motions, and were days away from submitting witness and exhibit lists, the Debtor was clearly on track for a June 5, 2023 trial. Because the State Court is intimately familiar with the underlying facts and issues, the State Court is better positioned to liquidate the claim than this Court. In short, by liquidating the disputed and unliquidated claim in the State Court Action, the Debtor can spend the least amount of estate funds doing what is necessary: liquidating the disputed claim. Additionally, neither Ralls nor Earth will be harmed by litigating PlantSnap's claims at this stage in the bankruptcy case because they do not have the assets or income to reorganize under chapter 11. On the other hand, absent relief from stay, PlantSnap will be unable to economically liquidate its claim, and will he be able to prosecute its declaratory judgment claim, which, if successful, will allow it to operate without the cloud of Ralls hanging over its head. This factor weighs in favor of granting the Motion.

91.     For the foregoing reasons, PlantSnap requests that the Court grant it relief from stay to liquidate its disputed claim against the Debtor and obtain declaratory relief that it properly removed Ralls as an officer and director of PlantSnap. For the avoidance of doubt, PlantSnap does not seek relief from stay to collect against the Debtor if a judgment is entered.

92.     PlantSnap request that the Court waive the fourteen-day stay requirement pursuant to Bankruptcy Rule 4001(a)(3). By doing so, the State Court will have additional time to promptly reschedule the trial date.

## RESERVATION OF RIGHTS

93.     PlantSnap makes no admission of fact or law and reserves any rights, claims, objections, and defenses that may be available to it before this Court and any other court with competent jurisdiction over the parties and the matters at issue and any other matters involving the administration of this case, the estate, and its relationship with the Debtor. Nothing in this Objection constitutes a waiver or release of any rights, claims, or defenses of PlantSnap in this case or any other case or proceeding. PlantSnap reserves the right to further supplement this Motion and responses thereto.

WHEREFORE, PlantSnap respectfully requests that the Court grant the Motion, and any other relief as the Court deems just and proper.


Dated: May 8, 2023                    */s/ Patrick R. Akers*
                                       Timothy M. Swanson (47267)
                                       Patrick R. Akers (54803)
                                       MOYE WHITE LLP
                                       1400 16th Street, 6th Floor
                                       Denver, Colorado 80202
                                       (303) 292-2900
                                       (303) 292-4510 (facsimile)
                                       tim.swanson@moyewhite.com
                                       patrick.akers@moyewhite.com

                                       *Counsel for PlantSnap Inc.*