## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 23-11620-TBM |
| | ) | |
| ERIC RALLS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| PLANTSNAP INC., | ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC RALLS, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(2), (4), AND (6)

PlantSnap Inc. ("**PlantSnap**"), by and through its undersigned counsel, submits the following *Complaint for Determination of Nondischargeability of Debt Under 11 U.S.C. § 523(a)(2), (4), and (6)* (the "**Complaint**") against Eric Ralls ("**Ralls**" or the "**Debtor**").

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b).

2.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4.      This proceeding has been brought in accordance with Rule 7001(6) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

5.      Pursuant to Bankruptcy Rule 7008, PlantSnap consents to adjudication and entry of final orders and judgments by this Court for any and all matters arising in or related to this adversary proceeding.

6.      This Complaint is timely because the last day by which PlantSnap may oppose discharge or dischargeability is July 24, 2023. *See* Notice of Chapter 11 Bankruptcy Case, *In re Ralls*, No. 23-11620-TBM (Bankr. D. Colo. Apr. 25, 2023), ECF No. 16.

### PARTIES

7.      PlantSnap is a Delaware corporation with its principal place of business at 1040 South Gaylord Street, Suite 67, Denver, Colorado 80209.

8.      Ralls is an individual that resides at 473 ½ West Colorado Avenue, Telluride, Colorado 81435.

### GENERAL ALLEGATIONS

### PlantSnap Formation

9.      Ralls founded PlantSnap in 2016.

10.     From PlantSnap's formation until March 9, 2021, Ralls was PlantSnap's majority shareholder, director, and Chief Executive Officer.

11.     PlantSnap owns a mobile application that allows users to identify plant types through their cell phone camera (the "**PlantSnap App**").

12.     PlantSnap's operations are conducted through numerous accounts, including, but not limited to, Alpine Bank, Amazon Web Services ("**AWS**"), Apple App Store Connect, CleverTap, Dropbox, Facebook, Firebase, GoDaddy, Google Play Console, Google Workspace Suite ("**G Suite**"), Huawei HMS Store, Imagga, Instagram, No Marker, Pinterest, QuickBooks, and Singular (collectively, the "**Accounts**").

13.     In February 2017, DEJ Partners, LLC f/k/a DEJ Family Limited Partnership ("**DEJP**") became PlantSnap's first major seed investor.

14.     Daniel Johnson ("**Johnson**") is the general partner of DEJP.

**Agreements Between PlantSnap, Ralls, and DEJP**

15.     Over the course of two years, PlantSnap, Ralls, and DEJP executed numerous agreements in which DEJP loaned money or extended credit to PlantSnap.

16.     PlantSnap defaulted on two of its obligations on February 24, 2021.

<u>Consolidated Note</u>

17.     PlantSnap and DEJP executed that certain Consolidated Note dated September 30, 2019 in the principal amount of $9,103,301.44 (the "**Consolidated Note**"), a copy of which is attached at <u>Exhibit 1</u>.

18.     The Consolidated Note consolidated, in part, obligations under various agreements, including the following:

    a.     Accounts Receivable Loan Pledge Agreement dated July 12, 2017 between the PlantSnap, Ralls, and DEJP, as amended by that the Amended and Restated Accounts Receivable Loan and Pledge Agreement dated August 9, 2017 (the "**A&R Agreement**").

    b.     Royalty Agreement dated July 26, 2017 between PlantSnap, Ralls, and DEJP, as amended by that certain Amended and Restated Royalty Agreement dated May 24, 2018 (the "**Royalty Agreement**"), a copy of which is attached at <u>Exhibit 2</u>.

    c.     Royalty Agreement dated September 30, 2018 between PlantSnap, Ralls, and DEJP (the "**Consolidated Royalty Agreement**").

19.     The Consolidated Note matured when DEJP demanded payment of the unpaid portion of the principal amount and any accrued but unpaid interest at any time after September 2, 2019. Ex. 1 § 1(a).

20.     Under the Consolidated Note, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Consolidated Note when due. *Id.* § 6(a)(i).

21.     As security for PlantSnap performing its obligations under the Consolidated Note, as well as the A&R Agreement, Royalty Agreement, and Consolidated Royalty Agreement, Ralls agreed to pledge 750,000 shares of common stock in PlantSnap (the "**Pledged Shares**").

22.     The Consolidated Note states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]." *Id.* § 4(b).

23.     The Consolidated Note states, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers." *Id.* § 4(d).

24.     The Consolidated Note further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral." *Id.* § 4(g)(i).

25.     In connection with the Royalty Agreement, Ralls executed the Assignment Separate from Certificate (the "**Stock Power**"). Ex. 2 at 25.

26.     The Pledged Shares were secured at Pivotal Law Firm, Inc. ("**Pivotal**").

27.     The Stock Power enabled DEJP to effectuate taking possession of the Pledged Shares upon the occurrence of an event of default.

<u>Amex Agreement</u>

28.     PlantSnap, Ralls, and DEJP executed that certain Credit and Reimbursement Agreement dated August 15, 2017 (the "**Amex Agreement**," and with the Consolidated Note, the "**Obligations**"), a copy of which is attached at <u>Exhibit 3</u>.

29.     Pursuant to the Amex Agreement, Johnson authorized PlantSnap to use DEJP's American Express card (the "**Card**") in exchange for the repayment of card charges plus interest.

30.     The charged amounts and interest on those charged amounts became due and payable within five days of receipt of the Card statement. Ex. 3 § 2.

31.     Under the Amex Agreement, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Amex Agreement when due, and fails to cure such default within five business days of written notice of the default. *Id.* § 7(a)(i).

32.     PlantSnap agreed to "only use the [Card] for reasonable or necessary company related expenses." *Id.* § 1.

33.     PlantSnap agreed to "obtain prior written approval of [DEJP] prior to making charges in excess of $10,000." *Id.*

34.     Ralls received one mile of airline rewards for each dollar charged on the Amex card. *Id.* § 3.

35.     As security for PlantSnap performing its obligations under the Amex Agreement, Ralls agreed to pledge the Pledged Shares.

36.     The total number of the Pledged Shares pledged under the Amex Agreement was related to the total amount owed under the Amex Agreement at the time of the Event of Default. *Id.* § 5(g)(i).

37.     For example, if the total amount owed under the Amex Agreement at the time of the Event of Default was $3,000.00, then the total number of the Pledged Shares pledged under the Amex Agreement was 3,000. *Id.*

38.     The Amex Agreement states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]." *Id.* § 5(b).

39.     The Amex Agreement states, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in lank, including duly executed blank stock powers." *Id.* § 5(d).

40.     The Amex Agreement further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral." *Id.* § 5(g)(i).

### PlantSnap Defaults on the Obligations

41.     PlantSnap defaulted on the Obligations.

42.     As of February 24, 2021, PlantSnap failed to repay $11,398,304.11 in outstanding principal and interest under the Consolidated Note.

43.     As of February 24, 2021, PlantSnap failed to repay $978,043.23 in outstanding principal and interest under the Amex Agreement.

44.     On February 24, 2021, DEJP sent the Notice of Default and Demand for Repayment to PlantSnap (the "**Notice of Default**"), a copy of which is attached at Exhibit 4.

45.     On February 26, 2021, Ralls received the Notice of Default. Ex. 4.

46.     PlantSnap failed to cure the defaults under the Obligations within five business days of the Notice of Default.

47.     An Event of Default occurred under the Obligations.

**Ralls Is No Longer a Shareholder, Director, or Officer of PlantSnap**

48.     On March 6, 2021, DEJP sent a letter to Ralls, notifying him that DEJP intended to exercise its right to take ownership of the Pledged Shares (the "**Notice of Invocation**"), a copy of which is attached at Exhibit 5.

49.     Ralls received the Notice of Invocation on March 8, 2021. Ex. 5.

50.     On March 8, 2019, following receipt of the completed Stock Power and confirmation that Ralls received the Notice of Invocation, PlantSnap transferred the Pledged Shares from Ralls to DEJP on PlantSnap's stock ledger. Exhibit 6, Completed Stock Power.

51.     On March 9, 2021, Pivotal delivered the Pledged Shares to Johnson and PlantSnap's counsel.

52.     DEJP became the majority shareholder of PlantSnap as a result of the transfer.

53.     On March 9, 2021, DEJP provided a signed written consent to PlantSnap that removed Ralls as a director on PlantSnap's Board of Directors (the "**Board**").

54.     DEJP appointed Johnson as the sole member of the Board.

55.     On March 9, 2021, the Board issued a Written Consent of the Board of Directors of PlantSnap Inc. (the "**Resolutions**"), a copy of which is attached at Exhibit 7.

56.     The Resolutions provided that:

a.      Ralls was removed from any and all officer or director positions with PlantSnap;

b.      Ralls was removed as an authorized person and/or signatory on PlantSnap's accounts or contracts;

c.      Ralls no longer has the authority to act on behalf of PlantSnap; and

     d.    Matthew Giblin ("**Giblin**"), the Chief Operations Officer, was appointed as the Chief Executive Officer, Treasurer, and Secretary.

57.    On March 11, 2021, PlantSnap's counsel sent a cease and desist and demand for turnover letter to Ralls (the "**Cease and Desist Letter**"), a copy of which it attached at <u>Exhibit 8</u>.

**Ralls' Actions as Director, Officer, and Majority Shareholder of PlantSnap**

<u>Ralls' Self-Dealing with Earth</u>

58.    Ralls is the sole officer and director of Earth.com, Inc. ("**Earth**").

59.    Upon information and belief, Earth is the alter ego of Ralls.

60.    Earth provides news and information concerning nature, science, and the environment through the website, http://www.earth.com/ (the "**Earth Domain**").

61.    Earth has no ownership interest in the Earth Domain.

62.    Earth previously rented the Earth Domain pursuant to that certain Rent-to-Own—Domain Name Sale Agreement dated June 27, 2016 between Ralls Enterprises, LLC and Innovation HQ, Inc. ("**Innovation**") (the "**Rent-to-Own Agreement**").

63.    Earth defaulted on the Rent-to-Own Agreement within months of executing the agreement.

64.    On April 25, 2022, Innovation sent a letter to Ralls, declaring a default under the Rent-to-Own Agreement and notifying Ralls of Innovation's intention to repossess the Earth Domain.

65.    Neither Ralls nor Earth (nor any affiliated entity) cured the default, and Innovation repossessed the Earth Domain.

66.    Ralls used PlantSnap's vendors, contractors, and intellectual property to further Earth's operations without compensating PlantSnap.

67.     The database that comprises the plant profiles, which allow the PlantSnap App to function, is in the possession or control of Earth.

68.     PlantSnap does not have access to those plant profile pages.

69.     PlantSnap ran three crowdfunding campaigns.

70.     At the onset of the third campaign in October 2019, Giblin was responsible for preparing financials and having PlantSnap's financials audited.

71.     During that process, Giblin discovered, for the first time, that Ralls had been paying Earth hundreds of thousands of dollars under the category, "Advertising," under a certain Sponsorship Agreement dated January 1, 2017 between PlantSnap and Earth (the "**Sponsorship Agreement**"), a copy of which is attached at Exhibit 9.

72.     The Sponsorship Agreement provided no discernable value to PlantSnap.

73.     Upon information and belief, Ralls executed the Sponsorship Agreement in an effort to justify monetary transfers from PlantSnap to Earth.

74.     Upon Information and Belief, Ralls did not execute the Sponsorship Agreement until well-after the purported January 1, 2017 date of execution.

75.     Following the discovery that Ralls transferred PlantSnap's funds to Earth, Ralls signed a Debt Cleanup Board Resolution, which required Ralls to (a) transfer financial control to Giblin and Johnson for budgeting and banking purposes, and (b) segregate funds from the third crowdfunding campaign into a separate bank account.

76.     Ralls signed the Debt Cleanup Board Resolution with no intention to abide by its terms.

77.     Ralls refused Giblin access to PlantSnap's bank account.

78.     Ralls refused to change the signatory authority on PlantSnap's bank account.

DHN Unauthorized Loan and Misrepresentations

79.     PlantSnap, DEJP, Ralls, and Earth executed a certain Memorandum of Terms for Purchase of Series Seed Preferred Stock of PlantSnap Inc. dated January 27, 2021 (the "**Memorandum**"), a copy of which is attached at Exhibit 10.

80.     The nonbinding Memorandum was entered into in an attempt to reduce PlantSnap's obligations to DEJP by converting DEJP's debt to equity, and to prevent DEJP from issuing a notice of default.

81.     The Memorandum refers to Ralls and Earth as if they were one entity.

82.     PlantSnap, DEJP, Ralls, and Earth made several representations as part of the Memorandum.

83.     One of those representations concerned PlantSnap's relationship with Evergreen Garden Center ("**Evergreen**"), and a payment made by Evergreen in the amount of $300,000.00 pursuant to an agreement between PlantSnap and Evergreen (the "**Evergreen Payment**").

84.     Ralls represented, "Ralls warrants that he has not, as of the date of this Memorandum, and will not, hypothecate, pledge, promise, factor, obtain an advance upon, or encumber in any other fashion the proposed initial Evergreen partnership payment." Ex. 10.

85.     Despite representing that he would not "obtain an advance upon" the Evergreen Payment, Ralls had already taken the letter of intent that the Evergreen Payment was based on to DHN Capital, LLC d/b/a Nations Interbanc ("**DHN**"), a factoring company, on or around December 24, 2020.

86.     Ralls obtained $214,000.00 in accounts receivable advance loans from (the "**DHN Advance**").

87.     As collateral for the DHN Advance, Ralls assigned the revenue that PlantSnap received from MonetizeMore and two app stores (the "**Collateral Sources**")

88.     Giblin discovered the existence of the DHN Advance upon the Evergreen Payment in February of 2021.

89.     On February 15 and 17, 2021, Giblin informed Ralls that he lacked authority to undertake the DHN Advance.

90.     DHN required that the payments from the Collateral Sources be deposited directly into a DHN sweep account.

91.     DHN did not receive the December and January MonetizeMore remittances.

92.     Ralls changed the remittance instructions and redirected several payments to PlantSnap's accounts, including a $10,457.29 payment on January 19, 2021 and a $6,458.24 payment on February 16, 2021.

93.     Ralls transferred a substantial portion of the diverted revenue from the Collateral Sources from PlantSnap to Earth.

94.     DHN issued a notice of default to PlantSnap, and demanded that PlantSnap cure its default by March 1, 2021.

95.     Ralls cured the default sometime in March of 2021 after DHN threatened to notify the two app stores, the major sources of revenue for PlantSnap, and only after transferring more than $80,000.00 of the Evergreen Payment to Earth.

96.     Ralls' actions and false misrepresentation effectively destroyed PlantSnap's ability to eliminate more than $5,971,186.47 in outstanding obligations to DEJP.

<u>AWS Electronic Payment Error</u>

97.     PlantSnap's servers are hosted by AWS.

98.     Without AWS, the PlantSnap App would cease functioning without another web hosting service.

99.     In December of 2020, PlantSnap was three months behind in payments to AWS and owed approximately $33,000.00.

100.    In January of 2021, Ralls represented to AWS and Giblin that Ralls had paid the delinquent payments.

101.    Ralls intentionally deceived AWS and PlantSnap into believing Ralls sent the payments.

102.    Upon information and belief, Ralls initiated an electronic transfer to AWS when he was aware that there were insufficient funds to cover such payments, and then took a screen shot of the initiated payment and shared that screen shot with AWS.

103.    AWS later reported that there was an error with the payments.

104.    Several days later, Ralls claimed not to know what happened and stated there must be an error in the payment system.

### Ralls Stole PlantSnap's Funds

105.    Until DEJP took control of PlantSnap, there was an extensive amount of commingling between PlantSnap, Ralls, and Earth.

106.    A substantial portion of Earth's expenses were paid for by PlantSnap, including at least $902,003 in 2018 and 2019.

107.    PlantSnap received no consideration for paying Earth's expenses.

108.    Ralls and Earth stole at least $2,620,731 as set forth below:

   a.    $1,741,316 in transfers from PlantSnap's bank accounts to other bank accounts under Ralls' control;

   b.    $366,048 from Ralls' use of business credit cards for personal spending;

c.    $292,259 in payments made by PlantSnap to the personal credit cards of Ralls and his mother, Karen Barett;

d.    $104,000 in rent paid for Ralls' house in Telluride, Colorado that was reported as a business expense;

e.    $65,007.28 paid towards a prior litigation settlement related to GreenAtom, Inc., another affiliated entity of Ralls, for which PlantSnap has no involvement;

f.    $32,000 paid directly to Ralls' mother; and

g.    $25,107 in ATM withdrawals and other cash withdrawals from PlantSnap's checking accounts.

109.    In late-2020 and early-2021, Ralls solicited six investors (the "**705 Investors**") to invest in PlantSnap.

110.    Between February 22 and March 8, 2021, and despite knowing the company had defaulted on its obligation to DEJP, Ralls entered into six convertible notes on behalf of PlantSnap with the 705 Investors.

111.    DEJP did not consent to the issuance of the six convertible notes, as required under that certain Stockholders' Agreement dated October 19, 2017 between PlantSnap, Ralls, and DEJP, a copy of which is attached at Exhibit 11.

112.    The last three promissory notes executed by Ralls on behalf of PlantSnap on March 8, 2021 occurred just two days after DEJP informed Ralls that it was taking ownership of the Pledged Shares, and just one day before Ralls was removed as a director and officer.

113.    Of these six investors, one "Accredited Investor," who could "only scrape together about $500," eventually agreed to invest $5,000, an amount she clearly could not afford, after Ralls reduced the "minimum" investment amount from $125,000 to $20,000 to $5,000. Exhibit 12, Sweet Emails at 1–3, 8–11.

114.    On account of DEJP foreclosing on Ralls' shares in PlantSnap, and the Board removing Ralls as an officer and director of PlantSnap, Ralls recognized that he would no longer be entitled to such proceeds, and directed the 705 Investors to wire the funds directly to Earth's bank account. Exhibit 13, Kwok Emails; Exhibit 14, Jaris Emails; Exhibit 15, Powers/Brownlie Emails.

115.    Ralls and Earth took $705,000 from PlantSnap during this time, $630,000 of which occurred on or after the date on which Ralls was removed as an officer, director, and shareholder of PlantSnap.

116.    When one investor asked why the money was being transferred to Earth, and not PlantSnap, Ralls stated on March 11, 2021, "I'm working to integrate earth.com and PlantSnap under one umbrella, and that umbrella is what you are buying stock in." Ex. 15 at 12.

117.    This false statement was made two days after Ralls was removed as an officer, director, and shareholder of PlantSnap.

118.    Ralls has purposefully concealed a seventh investor, Philip N. Daly ("**Daly**"), with whom he executed a convertible promissory note on behalf of PlantSnap on March 5, 2021.

119.    During the State Court Action, Ralls did not identify Daly as a person with whom he solicited or entered into an agreement as an investor or creditor, despite PlantSnap and DEJP issuing written discovery in the State Court Action (as defined below) on such topics.

120.    Ralls did not identify Daly on his *List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders*, which he filed on April 19, 2023, or on his *Schedule D: Creditors Who Have Claims Secured by Property* or *Schedule E/F: Creditors Who Have Unsecured Claims*, which he filed on May 10, 2023.

14

121. PlantSnap only learned by Daly when he filed Proof of Claim No. 7-1 on May 17, 2023.

122. While duping the 705 Investors and siphoning off PlantSnap's funds for his own benefit, Ralls failed to pay PlantSnap's creditors.

123. Since Ralls was removed as an officer and director of PlantSnap, PlantSnap has spent considerable resources working to resolve past-due payments with PlantSnap's creditors, and has even had to litigate—and continues to litigate—with several of PlantSnap's and/or Earth's creditors. *See, e.g., SocialCode, LLC v. PlantSnap Inc.*, No. 2023CV30002 (Colo. Dist. Ct. San Miguel Cty. Jan. 31, 2023); *Entravision v. PlantSnap Inc.*, No. 2022CV30007 (Colo. Dist. Ct. San Miguel Cty. Mar. 3, 2022).

**Following His Removal, Ralls Continued to Wrongly Act on Behalf of PlantSnap**

124. After losing his shares in PlantSnap and being removed as an officer and director of PlantSnap, Ralls took a number of steps to cover his tracks and assert control over PlantSnap's operations.

125. Upon learning that DEJP intended to invoke its rights under the Obligations, Ralls transferred funds previously diverted from PlantSnap to Earth back to PlantSnap's account and to PlantSnap's vendors.

126. Between February 22 and March 10, 2021, Ralls made twenty-three transfers totaling $240,100.00 from Earth to PlantSnap.

127. Ralls ignored the Board's resolutions, and frustrated PlantSnap's operations.

128. Ralls refused to turn over to PlantSnap the Accounts which were in his possession, custody, or control.

129.    Ralls prevented Giblin, PlantSnap's Chief Executive Officer, from accessing the Accounts, including PlantSnap's bank accounts and the two app stores, where a majority of PlantSnap's revenue is earned.

130.    On March 14, 2021, Ralls cut off Giblin's access to his company email account.

131.    Ralls prevented PlantSnap's consultants from accessing certain Accounts, inhibiting the consultants from performing their work as directed by the Board.

132.    Ralls continued to send messages to PlantSnap's contract counterparties, vendors, customers, and consultants claiming to be acting on PlantSnap's behalf.

133.    Ralls continued to act on PlantSnap's behalf, despite being removed as a shareholder and CEO.

134.    In a March 13, 2021 email to Evergreen and select PlantSnap individuals, Ralls indicated that he would continue to work on the PlantSnap/Evergreen partnership. Exhibit 16, Evergreen Emails at 2.

135.    On March 15, 2021, Ralls sent an email to certain consultants, stating "I AM allowed/able and that I SHOULD continue operating the company," and that he will continue "working to get PlantSnap 5.0 WITH all Evergreen content fully implemented and launched by April 1." Ex. 16 at 1.

### The State Court Action

136.    On March 17, 2021, PlantSnap initiated an action against Ralls and Earth before the San Miguel County, Colorado District Court (the "**State Court**") in the case styled, *PlantSnap Inc. v. Ralls*, No. 2021CV30005 (Colo. Dist. Ct. San Miguel Cty. Mar. 17, 2021) (the "**State Court Action**").

137.    In the State Court Action, PlantSnap seeks a declaration that Ralls was properly removed from PlantSnap, and damages on account of Ralls and Earth's widespread fraud and civil theft, among other claims.

138.    On April 23, 2021, the State Court heard PlantSnap and Ralls' cross-motions for preliminary injunction, and on April 27, 2021 at 3:49 PM MT, entered the *Combined Order Re: Plaintiff's and Defendant's Motions for Preliminary Injunction* (the "**Combined Order**"), a copy of which is attached at Exhibit 17.

139.    In the Combined Order, the State Court rejected Ralls' "incredible" testimony and arguments as to why he was entitled to the Pledged Shares, and found that "Ralls was properly removed from the PlantSnap Board once [DEJP] proceeded pursuant to the Consolidated Note[ and] Amex Agreement." Ex. 17 at 6, 9.

140.    As a result, the State Court (i) "immediately enjoined [Ralls] from acting on behalf of PlantSnap and representing to any third parties that he is currently affiliated with PlantSnap," and (ii) ordered that Ralls "shall immediately turn over complete access to all of PlantSnap's Account," including PlantSnap's G Suite. *Id.* at 15–16.

141.    On April 27, 2021 at 4:31 PM MT, forty-two minutes after the Court entered the Combined Order, Ralls logged in as the system administrator of PlantSnap's G Suite and deleted fifteen email accounts, which included communications between Ralls and the 705 Investors.

142.    Ralls refused to turn over access to PlantSnap's G Suite until shortly after the accounts were permanently deleted.

143.    Ralls continued to operate a bank account in the name of PlantSnap well after the State Court entered the Combined Order and in violation thereof.

144.    Ralls attempted to solicit a $750,000 investment through his Earth contacts in May of 2021, pledging the shares on which the State Court already found DEJP properly foreclosed.

145.    On September 30, 2022, Ralls pleaded guilty to contempt for deleting PlantSnap's emails in the G Suite and for using a TIAA bank account held by PlantSnap for personal use in violation of the Combined Order.

146.    The State Court awarded PlantSnap and DEJP both remedial and punitive sanctions, which included awarding PlantSnap and DEJP $84,938.76 and $63,055.00, respectively, in fees and expenses for prosecuting the contempt motions, and sentencing Ralls to forty-eight hours in county jail. Exhibit 18, Contempt Orders.

147.    On February 28, 2023, PlantSnap moved for partial summary judgment against Ralls and Earth.

148.    On February 28, 2023, DEJP moved for partial summary judgment against Ralls.

149.    On April 18, 2023, the State Court granted in part DEJP's motion for partial summary judgment, awarding $978,043.23 to DEJP against Ralls, and reaffirming that DEJP properly foreclosed on the Pledged Shares.

**Ralls Uses Three New Entities to Perpetuate His Fraudulent Activities**

150.    Undeterred by the fact that his fraud was being systematically uncovered in the State Court Action, Ralls continued to perpetuate his fraud through three new entities he created in May of 2021: EarthSnap, Inc. ("**EarthSnap**"), Metaversal Knowledge, Inc. ("**Metaversal**"), and Digital Earth Medica, Inc. ("**DEM**," and collectively, the "**New Ralls Entities**").

151.    On May 19, 2021, Ralls incorporated EarthSnap.

152.    On May 25, 2021, Ralls incorporated Metaversal.

153.    On May 26, 2021, Ralls incorporated DEM.

154.    Ralls incorporated the New Ralls Entities to obtain additional funds from unwitting creditors and investors, and to shield his and Earth's assets from PlantSnap and DEJP.

155.    Upon information and belief, EarthSnap is wholly owned and controlled by DEM.

156.    Upon information and belief, Metaversal is wholly owned and controlled Ralls.

157.    Upon information and belief, Ralls is the majority shareholder and sole officer and director of DEM.

158.    Earth and the New Ralls Entities are each substantially controlled by and a mere instrumentality of Ralls.

159.    On or shortly after May 26, 2021, Ralls transferred all of his equity interest in Earth to DEM.

160.    On February 15, 2022, Ralls transferred all of Earth's assets to one or more of the New Ralls Entities.

161.    Ralls concealed and failed to disclose the conveyance of Earth's stock until it was uncovered by PlantSnap and DEJP in the State Court Action.

162.    Ralls, Earth, and DEM engaged in this conveyance without any consideration paid for Ralls' stock in Earth.

163.    Earth and the New Ralls Entities are alter egos of each other.

### The Chapter 11 Case

164.    On April 19, 2023, Ralls filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

165.    Ralls scheduled PlantSnap as holding two unsecured claims:

    a.    A contingent, unliquidated, and disputed claim in the amount of $84,338.76 on account of "Attorney Fee Award"; and

    b.    A contingent, unliquidated, and disputed claim in an unknown amount on account of "Litigation Claims."

166.    On June 28, 2023, PlantSnap filed two proofs of claim:

    a.    Proof of Claim No. 17-1 in the amount of $86,111.61 (the "**AF Debt**") on account a judgment for attorneys' fees in the State Court Action; and

    b.    Proof of Claim No. 18-1 in the amount of $8,239,884.40 (the "**PlantSnap Debt**") on account of the damages to be liquidated in the State Court Action.

167.    On May 8, 2023, PlantSnap and DEJP moved for relief from the automatic stay under section 362(d) of the Bankruptcy Code to liquidate their claims in the State Court Action.

168.    On July 19, 2023, the Court granted relief from the automatic stay for PlantSnap and DEJP to liquidate their claims in the State Court.

169.    Pursuant to Bankruptcy Rule 4001(a)(3), the Court's order does not become effective until August 2, 2023.

### COUNT I
### Nondischargeability of the PlantSnap Debt Under 11 U.S.C. § 523(a)(2)

170.    PlantSnap incorporates its prior allegations as if fully set forth herein.

171.    Section 523(a)(2) of the Bankruptcy Code provides, in relevant part, that there is no discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

172.    The Debtor obtained PlantSnap's money, property, and services through actual fraud.

173.    The Debtor made each of the transfers that comprise the PlantSnap Debt (the "**PlantSnap Debt Transfers**").

174.    Ralls made the PlantSnap Debt Transfers under the pretext that PlantSnap was repaying Earth for goods and services, but Earth did not provide those goods and services.

175.    Ralls knew that Earth did not provide those goods and services.

176. Ralls created the Sponsorship Agreement as a vehicle to further his fraudulent activities and justify the PlantSnap Debt Transfers.

177. At the time Ralls created and executed the Sponsorship Agreement, PlantSnap and Earth were both under the control of Ralls.

178. Earth did not provide the purported advertising services to PlantSnap under the Sponsorship Agreement.

179. PlantSnap did not receive any benefit from the Sponsorship Agreement.

180. Ralls knew that PlantSnap did not receive any benefit from the Sponsorship Agreement.

181. The Sponsorship Agreement's sole purpose was to transfer PlantSnap's assets directly or indirectly to Ralls, Earth, or a third party for their benefit.

182. Although the Sponsorship Agreement is dated January 1, 2017, the agreement was created and backdated well-after the January 1, 2017 effective date.

183. Ralls purposefully withheld the existence of the Sponsorship from Giblin, Johnson, and contract counterparties to the convertible notes.

184. Ralls only disclosed the Sponsorship Agreement to Giblin once Giblin discovered the agreement in connection with the Debt Cleanup Board Resolution.

185. Additionally, Ralls and Earth engaged in actual fraud when they stole $705,000 from PlantSnap.

186. In February and March of 2021, Ralls executed six convertible notes on behalf of PlantSnap, which he was not expressly not allowed to do under the Stockholders' Agreement.

187.     Between the dates on which the 705 Investors executed the convertible notes and the dates on which the 705 Investors wired the funds, Ralls knew that he was or was soon about to be removed as an officer and director of PlantSnap.

188.     Recognizing this reality, Ralls directed the 705 Investors to wire the funds not to PlantSnap's bank account, but Earth's bank account.

189.     When asked by one of the 705 Investors why the funds were being transferred to Earth's bank account, Ralls lied and stated that he was integrating the operations of Earth and PlantSnap "under one umbrella."

190.     At the time this statement was made, Ralls knew this statement was false because he was no longer an officer or director of PlantSnap.

191.     At the time this statement was made, PlantSnap had no intention to integrate the operations of PlantSnap and Earth "under one umbrella."

192.     Ralls redirected the $705,000 solely to obtain the funds prior to DEJP taking control of PlantSnap.

193.     Ralls had no intention of returning the PlantSnap Debt Transfers, including the $705,000 he redirected to Earth's bank account.

194.     Ralls did not return the PlantSnap Debt Transfers, including the $705,000 he redirected to Earth's bank account.

195.     Ralls used a substantial portion of the $705,000 to pay for his and Earth's legal bills in the State Court Action.

196.     Ralls knew he could use PlantSnap's funds to pay for his legal bills, because he needed Board approval to obtain defenses costs as required under PlantSnap's corporate documents.

197.    As a result of the Debtor's fraud, the amounts under the PlantSnap Debt, including the $705,000.00 that Ralls and Earth stole from PlantSnap, are nondischargeable under section 523(a)(2) of the Bankruptcy Code.

## COUNT II
### Nondischargeability of the PlantSnap Debt Under 11 U.S.C. § 523(a)(4)

198.    PlantSnap incorporates its prior allegations as if fully set forth herein.

199.    Section 523(a)(4) of the Bankruptcy Code provides that there is no discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

200.    C.R.S. § 18-4-401 (the "**Theft Statute**") defines theft, in relevant part, as:

A person commits theft when he knowingly obtains or exercises control over anything of value without authorization . . . and

    (a)    Intends to deprive the other person permanently of the use or benefit of the thing of value;

    (b)    Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or]

    (c)    Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit . . . .

201.    Under the Theft Statute, PlantSnap is entitled to treble damages and its attorneys' fees and costs in prosecuting its civil theft claim. *See* C.R.S. § 18-4-401.

202.    The acts of fraud, defalcation, embezzlement, and larceny as defined by section 523(a)(4) of the Bankruptcy Code are addressed by the Theft Statute.

203.    Ralls appropriated PlantSnap's funds for his own benefit by fraudulent intent or deceit.

204.    Ralls deposited PlantSnap's funds in Earth's accounts or accounts controlled by Ralls, which were inaccessible to PlantSnap.

23

205.    Ralls had no reason or justification for appropriating PlantSnap's funds.

206.    Ralls fraudulently and wrongfully took PlantSnap's funds with the intent to convert the property to his use without PlantSnap's consent.

207.    Ralls was the PlantSnap's and Earth's Chief Executive Officer at the time he made the PlantSnap Debt Transfers.

208.    At the time Ralls created the Sponsorship Agreement, PlantSnap and Earth were both under the control of Ralls.

209.    Ralls acted in a fiduciary capacity at the time he made each the PlantSnap Debt Transfers.

210.    As an officer, director, and majority shareholder of PlantSnap, Ralls had a duty to secure PlantSnap's funds entrusted to him.

211.    The Debtor obtained PlantSnap's money, property, and services through fraud and defalcation.

212.    The Debtor treated PlantSnap's accounts as his personal piggybank.

213.    The Debtor knew that the Debtor did not receive any benefit or consideration when he made the PlantSnap Debt Transfers.

214.    The Debtor made the PlantSnap Debt Transfers for his own benefit of Earth's benefit.

215.    The Debtor intentionally disguised the nature of the PlantSnap Debt Transfers by creating and executing the Sponsorship Agreement.

216.    PlantSnap did not receive any benefit from the Sponsorship Agreement.

217.    Additionally, Ralls stole $705,000.00 from PlantSnap by executing convertible notes on behalf of PlantSnap and redirecting those proceeds to Earth's bank account (i.e., out of

Case:23-11620-TBM   Doc#:76   Filed:07/24/23   Entered:07/24/23 15:55:10   Page25 of 27

reach of PlantSnap) when he was about to be removed, or removed, as an officer and director of PlantSnap.

218.    Ralls did not inform the 705 Investors that he was about to be removed, or removed, as an officer and director of PlantSnap.

219.    Ralls lied to the 705 Investors when he stated that he was integrating the operations of Earth and PlantSnap "under one umbrella."

220.    Ralls had no intention of returning the PlantSnap Debt Transfers, including the $705,000 he redirected to Earth's bank account.

221.    Ralls did not return the PlantSnap Debt Transfers, including the $705,000 he redirected to Earth's bank account.

222.    Ralls used a substantial portion of the $705,000 to pay for his and Earth's legal bills in the State Court Action.

223.    Ralls knew he could use PlantSnap's funds to pay for his legal bills, because he needed Board approval to obtain defenses costs as required under PlantSnap's corporate documents.

224.    As a result of the Debtor's fraud and defalcation as PlantSnap's fiduciary, embezzlement, and larceny, the PlantSnap Debt, including the $705,000.00 that Ralls and Earth stole from PlantSnap, are nondischargeable under section 523(a)(4) of the Bankruptcy Code.

**COUNT III**
**Nondischargeability of the PlantSnap Debt and AF Debt Under 11 U.S.C. § 523(a)(6)**

225.    PlantSnap incorporates its prior allegations as if fully set forth herein.

226.    Section 523(a)(6) of the Bankruptcy Code provides that there is no discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

227.     The Debtor caused willful and malicious injuries to PlantSnap.

228.     Ralls made, and intended to make, the PlantSnap Debt Transfers.

229.     As a result of the PlantSnap Debt Transfers, the Debtor made it so that PlantSnap could not repay its obligations, including the Obligations.

230.     At the time Ralls made the PlantSnap Debt Transfers, the Debtor knew that he was inhibiting PlantSnap from repaying its obligations, including the Obligations.

231.     It was wrong for Ralls to make the PlantSnap Debt Transfers knowing that such transfers would cause PlantSnap to default on its obligations, including the Obligations.

232.     The Debtor harmed PlantSnap by making the PlantSnap Debt Transfers, which rendered PlantSnap unable to satisfy its obligations, including the Obligations.

233.     Additionally, Ralls' conduct which lead to the AF Debt was willful and malicious.

234.     Ralls was ordered by the State Court to turn over the Accounts, including the G Suite.

235.     Instead of turning over the G Suite, as required by the State Court, Ralls, instead, deleted certain email accounts, and waited to provide access to the G Suite until those accounts were permanently deleted.

236.     Those accounts contained the communications between Ralls and the 705 Investors.

237.     Ralls deleted the email accounts in an effort to conceal communications he had with creditors and investors, including the 705 Investors.

238.     Ralls admitted to deleting the email accounts in the G Suite in violation of the Court's Combined Order.

239.    As a result of Ralls' flagrant violation of the Combined Order, PlantSnap was required to expend $84,938.76 to unwind Ralls' contemptuous actions in order to prosecute its claims in the State Court Action.

240.    PlantSnap would not have incurred such fees and expenses had Ralls complied with his obligations under the Federal Rules of Civil Procedure and the Combined Order.

241.    As a result of the willful and malicious injuries to PlantSnap cause by the Debtor, the PlantSnap Debt and AF Debt are nondischargeable under section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, PlantSnap respectfully requests relief against Ralls for the following:

A.    A declaratory judgment that the PlantSnap Debt and AF Debt in the combined amount of $8,325,996.01 is nondischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6);

B.    An award of PlantSnap's attorneys' fees and costs as allowed by C.R.S. § 18-4-405 for this proceeding; and

C.    Any other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 24, 2023

/s/ Timothy M. Swanson
Timothy M. Swanson (47267)
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202
(303) 292-2900
(303) 292-4510 (facsimile)
tim.swanson@moyewhite.com

*Counsel for PlantSnap*